IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| BRISTOL LOLA BATHO,          ) | |
| ) | |
| **Plaintiff,**          ) | |
| ) | CIVIL ACTION FILE NO. |
| v.          ) | 2:23-cv-00273-RWS-JCF |
| ) | |
| LUMPKIN COUNTY, GEORGIA,   ) | JURY TRIAL DEMANDED |
| ) | |
| **Defendant.**          ) | |

## COMPLAINT

Plaintiff Bristol Lola Batho ("Ms. Batho" or "Plaintiff") hereby files this Complaint against Lumpkin County, Georgia (the "County") for damages and other relief for violations of Title VII of the Civil Rights Act of 1964.

## JURISDICTION AND VENUE

**1.**

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

**2.**

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because Defendant resides in this this District.

## ADMINISTRATIVE PREREQUISITES

**3.**

Plaintiff has exhausted all administrative requirements necessary to bring her claims. Plaintiff filed an EEOC charge based on her claims under

Title VII within 180 days of the Title VII-violative conduct at issue. The EEOC issued its Notice of Right to Sue on September 28, 2023.

4.

This action is timely filed with respect to Plaintiff Title VII claims as less than 90 days have passed since Plaintiff's receipt of the Notice of Right to Sue for the same.

## THE PARTIES

5.

Defendant Lumpkin County is a political subdivision of the state of Georgia and is subject to the jurisdiction of this Court. Lumpkin County may be served with a copy of this Complaint and process by serving the Chairman of the Lumpkin County Board of Commissioners, Chris Dockery, at his business address of 99 Courthouse Hill, Suite H, Dahlonega GA 30533.

6.

Plaintiff is a former employee of Lumpkin County, having worked for it for as a Firefighter/Advanced-EMT in its Emergency Services Department (the "Department") from 2017 until her discharge in 2022.

## STATEMENT OF FACTS

7.

This Complaint concerns the discrimination that Plaintiff Bristol Lola Batho suffered on the basis of her sex during her employment by the County,

culminating in her retaliatory termination after she notified the County that she had retained counsel to remedy that termination.

8.

From the outset of her employment, Ms. Batho endured discrimination as a result of the sex bias that was pervasive in the County's EMS department. This sex bias is characterized by a deep suspicion of young women as histrionic and disruptive.

9.

Ms. Batho's first experiences with this attitude came shortly after she began her employment, when her battalion commander at the time, Sharon Booth, an older woman, regularly assigned her different duties than her male counterparts on her shift and spread sexually charged untrue rumors about Ms. Batho.

10.

Ms. Batho is also aware that during this time frame, Sharon Booth remarked to another firefighter that she did not like having Ms. Batho on her shift specifically because she was a woman.

11.

Due to Ms. Booth's treatment of her, Ms. Batho requested to be moved to a different shift, where she worked for approximately the next four years.

12.

After those four years, Ms. Batho made the decision to attend paramedic school to earn her certification as a paramedic, of which there was a dire need in the department.

13.

Working her assigned station with its associated scheduling requirements and duties became exceedingly difficult in conjunction with her paramedic school schedule, so Ms. Batho requested to be transferred to a different station that could more aptly accommodate her class schedule.

14.

The County repeatedly denied Ms. Batho's request, though it had on several other occasions granted her similarly situated male counterparts' requests to change work schedules and duties to accommodate their class schedules.

15.

Eventually, Ms. Batho was forced to drop out of paramedic school.

16.

Ms. Batho subsequently learned that the reason that the Department would not transfer her was because multiple men on the shift to which she

requested to transfer had requested not to work with her because their girlfriends or wives had made them request to not work with females.

**17.**

When Ms. Batho complained of this to the Department Chief, he stated something to the effect of, "I understand how it is. I've worked with a female before, and it is uncomfortable."

**18.**

Ms. Batho then filed an internal complaint of discrimination based on these issues.

**19.**

Ms. Batho then discovered that another male firefighter who had enrolled in paramedic school was having his shifts covered by the Department so that he could complete his certification. When Ms. Batho had made this request, however, it was denied.

**20.**

In the meantime, all of Ms. Batho's assigned shifts were as a medic, which is far more intensive work than working on an engine. Meanwhile, the males in the Department were permitted to rotate among these positions.

**21.**

During this time, her ability to be rotated among other shifts and stations was uniquely limited because she was a woman due to the fact that certain male firefighters had requested not to work with a woman, which the County accommodated.

**22.**

When her human resources complaint proved ineffective at remedying these issues, Ms. Batho filed an EEOC charge on August 24, 2022.

**23.**

Ms. Batho also retained the undersigned to represent her. The undersigned sent the County a letter on August 26, 2022, which gave the County notice of his representation of her as to the matters described above.

**24.**

Then, on August 30, just four days letter, the County terminated her employment for a pretextual reason.

## COUNT I
## DISCRIMINAITON IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**25.**

Plaintiff incorporates all previous paragraphs by reference as if fully stated herein.

**26.**

As a woman, Plaintiff is a member of a recognized protected class for purposes of Title VII.

**27.**

Plaintiff was subjected to unwelcome sexual harassment and discrimination by Defendant.

**28.**

The harassment that Plaintiff suffered at the hands of these individuals was so severe and pervasive as to create a hostile working environment.

**29.**

Additionally, Defendant treated Plaintiff differently on the basis of her sex.

**30.**

To wit, Defendant treated Plaintiff differently than other, similarly situated male peers.

**31.**

This different treatment resulted in adverse actions including having to drop out of paramedic school.

**32.**

She was also at multiple points in time assigned less desirable job duties than her male counterparts.

**33.**

Defendant's discrimination also manifested in its refusal to transfer her in the same manner that it transferred male firefighters, specifically in accession to certain male firefighters' requests that they not work with female.

**34.**

Defendant also indicated its animus against Plaintiff directly on several occasions.

**35.**

Defendant's discriminatory animus toward her as a woman ultimately resulted in her termination.

**36.**

Plaintiff is entitled to all damages permitted by law, including but not limited to, compensatory damages, emotional distress damages, punitive damages, and attorneys' fees and costs.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**37.**

Plaintiff incorporates by reference the prior paragraphs of this complaint as if fully set forth herein.

**38.**

Plaintiff engaged in Title VII protected activity, including communicating with coworkers regarding workplace harassment and complaining on numerous occasions about the discrimination that she suffered including through filing an internal HR complaint, filing an EEOC charge, and through the undersigned's notification to the County that it was representing her.

**39.**

Defendant took adverse actions against Plaintiff in continuing to deny her transfers in the same manner and her assignment to different duties than her male counterparts.

**40.**

These retaliatory actions culminated in the County terminating her employment.

**41.**

Plaintiff is entitled to all damages permitted by law, including but not limited to, compensatory and punitive damages, back pay, front pay, and attorneys' fees and costs.

**WHEREFORE** Plaintiff respectfully requests judgment in her favor on each count in this Complaint and demands:

1. A Jury Trial;

2. Judgment in Plaintiff's favor and against Defendant under all claims in this Complaint;

3. An order Defendant to make whole Plaintiff by providing her with out-of-pocket losses as well as back pay in an amount equal to the sum of wages, salary, employment benefits and other compensation denied or lost as a result of Defendant's unlawful acts, together with interest thereon, all in an amount to be proven at trial;

4. Statutory damages and/or penalties under the Title VII;

5. An Order granting Plaintiff her reasonable attorney's fees and all other fees and costs associated with this action;

6. Declarative and injunctive relief appropriate to remedy the Title VII violations;

7. Interest; and

8. Such other and further relief as is just and proper.

This 21st day of December 2023.

/s/ S. Graham White
James M. McCabe
Georgia Bar No. 724618
jim@mccabe-lawfirm.com
S. Graham White
Georgia Bar No. 535538
graham@mccabe-lawfirm.com

The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA  30326
Office: (404) 250-3233
Fax: (404) 400-1724

Attorneys for Plaintiff Bristol Lola Batho